IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANCIL TONY HAMRICK,　　　　　　　*
　　　　　Petitioner,
　　v.　　　　　　　　　　　　　　　*　　CIVIL ACTION NO. AW-08-1942

JOHN S. WOLFE, et al.,　　　　　　　*
　　　　　Respondents.
　　　　　　　　　　　　　　　　　***

## MEMORANDUM

Now before the court is a Petition for habeas corpus relief filed by Ancil Tony Hamrick (Paper No. 1) and Respondents' Answer (Paper No. 6). After review of these documents, the court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*. For the reasons to follow, the Petition will be denied and dismissed with prejudice.

## Factual History

The facts adduced at trial, as described by the Maryland Court of Appeals were as follows:

In the trial court, appellant admitted killing Darlene Turney in the early morning hours of December 3, 2000. Ms. Turney died of ligature strangulation and multiple cutting and stab wounds. Appellant's defense was that at the time of the murder he was voluntarily intoxicated and therefore could not have formed the intent necessary for a conviction of either first degree murder or first degree burglary.

At the time of the murder, appellant was living with John Ponzette in a trailer in Lothian, Maryland. Ponzette testified that he and appellant shared an eight pack of "pony-sized" beer on the evening of December 2, 2000. Appellant drank six beers and Ponzette drank two that evening. According to Ponzette's testimony, appellant had the ability to drink great quantities of alcohol with seemingly little effect. In Ponzette's opinion, appellant was sober when he (Ponzette) went to bed at around 11:30 p.m. on December 2, 2000.

Appellant was the ex-boyfriend of the murder victim. He testified that during the afternoon and evening of December 2, 2000, he and Ponzette were drinking beer, getting high, and watching movies. Appellant said that he consumed approximately twelve to thirteen beers in Ponzette's presence. During the late evening hours of

December 2, or early hours of December 3, appellant drove to Ms. Turney's house in Calvert County, but parked his car several blocks away from the victim's house because "he didn't want to be detected." Once in Ms. Turney's yard, he cut the phone lines to her house so she could not "call the police because she [was] mad at [him]." He then entered the basement of the house by way of a sliding glass door.

Appellant went to Ms. Turney's bedroom and observed her sleeping on a bed next to their son, Josh. Appellant woke Ms. Turney, and they immediately began arguing. According to appellant, during the argument, the following transpired:

> She told me that she gave John Ponzette head and his cum tastes better than mine. I zapped out….First when she said [she] gave him head, I hit her once and she fell to the floor. Then she snapped right back up and came towards me. And she said it was good too. And that's when I hit her and put my hand over her mouth while she was on the ground and rendered her unconscious. The last thing I remember was her leg kicking and that's – like I say that's the last I remember until I was climbing over the fence going to my car.

After the killing, as he drove back to Mr. Ponzette's trailer, he threw away his shoes, fearing that he may have left footprints. He also threw away the knife that he had used to kill the victim. On cross-examination, appellant acknowledged that, although he had no recollection of cutting the victim, he must have been the one responsible for the ligature marks and slash wounds found on Ms. Turney's neck and for the multiple cutting and stab wounds on her back and chest.

Paper No. 6, Ex. 10, p. 1-3.

## **Procedural History**

After trial the jury found Petitioner guilty of first-degree murder, first-degree felony murder, and first-degree burglary. *Id.*, Ex. 6, p. 294-99. Thereafter, Petitioner was sentenced to two terms of life without parole and a consecutive term of twenty years in prison. *Id.*, Ex. 7.

On direct appeal Petitioner raised the following grounds:

> (1) Whether the judge erred in barring all testimony for the defense by a licensed clinical professional counselor, who undisputably had examined appellant and could have testified to his psychological profile, on the ground that the witness was neither a psychiatrist or psychologist? and

> (2) Whether the judge erred, in responding to the jury's request, in refusing to include, with the copies of his instructions to the jury on the crimes charged, a copy of his instructions on voluntary intoxication as a "defense" to the premeditation and deliberation elements of first-degree murder, and whether even those instructions were adequate?

*Id.*, Ex. 8.

The Court of Special Appeals of Maryland, in an unreported opinion, vacated Petitioner's felony murder conviction, but affirmed his convictions in all other respects. *Id.*, Ex. 10.

Petitioner filed a petition for writ of certiorari in the Court of Appeals of Maryland, seeking review of his claims regarding exclusion of the expert witness and the trial court's supplemental instructions to the jury. *Id.*, Ex. 11. The petition was denied on November 12, 2002. *Id.*, Ex. 12.

On February 21, 2003, Petitioner filed for post-conviction relief in the Circuit Court for Calvert County. *Id.*, Ex. 13-20 The petition, as amended, alleged that counsel was ineffective for: 1) failing to timely provide the court with the expert's qualifications; 2) making a prejudicial closing argument; 3) failing to object to an omission in the jury instruction concerning voluntary intoxication; 4) failing to suppress Petitioner's statements to the police; 5) failing to object to the court's ruling which prohibited the testimony of Petitioner's expert witness; 6) failing to call Petitioner's expert witness at sentencing; and 7) failing to argue a delay in presentment as a basis for suppressing Petitioner's statement to police. Petitioner also argued that his right to prompt presentment was violated, the trial court erred in not suppressing Petitioner's statements, and his appellate counsel was ineffective for failing to assert the issue regarding Petitioner's prompt presentment on appeal. *Id.*, Ex. 13-20. On June 27, 2006 and November 28, 2006, counseled post-conviction hearings were held in the Circuit Court. *Id.*, Ex. 18 and 19. Post-conviction relief was granted in that Petitioner was provided a new sentencing hearing based on ineffective assistance of

3

counsel, but was denied in all other respects.[1]  *Id*., Ex. 20.  Petitioner's application for leave to appeal raised the following claims: 1) Petitioner's right to prompt presentment was violated; 2) the trial court erred by not suppressing Petitioner's statement to police; (3) the trial court erred in excluding Petitioner's expert's testimony; and 4) trial counsel was ineffective for a) making a prejudicial closing argument; b) failing to object to the court's ruling prohibiting the testimony of Petitioner's expert witness, and c) failing to argue a delay in presentment as a basis for suppressing Petitioner's statement.  Petitioner also alleged appellate counsel was ineffective for failing to assert the prompt presentment violation on appeal.  *Id*., Ex. 21.  The application for leave to appeal was denied by the Court of Special Appeals of Maryland on March 6, 2008.  *Id*., Exs. 19-21.

Affording the *pro se* filing a generous construction, Petitioner raises the following claims: the trial court erred by 1) barring Petitioner's expert witness from testifying;   2) improperly instructing the jury;  and 3) failing to suppress his statements.  Trial counsel was ineffective for: 4) failing to timely provide the court with Petitioner's expert's qualifications; 5) making prejudicial closing arguments; 6) failing to object to the court's ruling prohibiting the testimony of his expert witness; 7) failing to object to the omission of part of the voluntary intoxication instruction; and 8) failing to argue a delay in presentment as a basis for suppressing his statement.  Petitioner also argues that appellate counsel was ineffective for: 9) failing to assert a prompt presentment violation on appeal.

## Threshold Considerations

### Timeliness & Exhaustion of State Remedies

---

[1] Petitioner was resentenced to life without parole and a twenty-year consecutive sentence.  Paper No.1, at 1, item 3.

Respondents do not contend, and the court does not find, that the Petition was filed outside the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1). Further, Petitioner no longer has any state direct review or collateral review remedies available to him with respect to the claims raised in this Court. His claims are exhausted for the purpose of federal habeas corpus review.

**Standard of Review**

Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to" Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in our cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).[2] Section 2254(d) also requires federal courts to give great deference to a state court's factual findings. *See Lenz v. Washington,* 444 F. 3d 295, 299 (4th Cir. 2006). Section 2254(e)(1) provides

---

[2] Although § 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*), a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409-410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). With these standards in mind, the Court will examine the merits of Petitioner's claims.

## Analysis

1. Trial court error

Petitioner's claim that the trial court erred in barring his expert from testifying at trial is unavailing. The State moved in limine to preclude any mention by defense counsel of defendant's expert witness until the defense produced evidence which demonstrated that the expert was qualified under Maryland law to testify as to Hamrick's diagnosis. Paper No. 6, Ex. 4, p. 126-27, 135-37. The proffer regarding the expert's qualifications was never made; therefore, the trial judge was without sufficient information to make a determination as to the expert's qualifications under Maryland Rule 5-702. *Id*., Ex. 10. Petitioner's claim regarding trial court error is based solely on state evidentiary law, and therefore provides no basis for federal habeas relief.

Petitioner also alleges that the trial court erred failing to respond properly to the jury's request for re-instruction on the crimes charged when it failed to re-instruct the jury on the defense of voluntary intoxication. In reviewing this claim, the Court of Special Appeals found:

> In the present case, appellant had already received a voluntary intoxication jury instruction. There is no requirement that the court repeat instructions or provide written instructions in addition to oral ones. "The decision to supplement [jury] instructions and the extent

> of supplementation are matters left to the sound discretion of the trial judge, whose decision will not be disturbed on appeal in the absence of a clear abuse of discretion." The jury in this case made a specific request for copies of the instructions defining the crimes, and the trial judge simply gave them what they wanted, and no more. There was no abuse of discretion.

Paper No. 6, Ex. 10, p. 15 (citations omitted).

A federal court "exercises a limited role" when collaterally reviewing a state trial court's jury instructions, *Smith v. Bordenkircher*, 718 F.2d 1273, 1276 (4th Cir. 1983), and "the inquiry is narrow." *Murphy v. Holland*, 776 F.2d 470, 476 (4th Cir. 1985). Because ordinarily "instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues," *Grundler v. North Carolina*, 283 F.2d 78-98, 802 (4th Cir. 1960), jury instructions are not cognizable on federal habeas review, unless the giving of the instruction violated a right guaranteed by the Fourteenth Amendment. *See Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Luchenberg v. Smith*, 79 F.3d 388, 391 (4th Cir. 1996) *(per curiam)* ("[A]n erroneous jury charge may form the basis of a habeas petition, . . ., where the instruction 'so infected the entire trial that the resulting conviction violates due process' by rendering the trial fundamentally unfair."). The mere omission of a required jury instruction is deemed less likely to be prejudicial than an erroneous instruction. *Henderson*, 431 U.S. at 155.

The intermediate appellate court's conclusion that the trial court's instructions provided a sufficient explanation of Maryland law is not subject to review by this Court. *See Smith v. Moore*, 137 F.3d 808, 821-22 (4th Cir. 1998). Even assuming, *arguendo*, that the failure to re-instruct was erroneous, Petitioner has failed to show a substantial likelihood that the jury would have reached a different verdict. Consequently, the undersigned finds that Court of Special

Appeals' conclusions regarding the trial court's instructions to the jury are neither contrary to or an unreasonable application of clearly established federal law, nor an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d).

Petitioner's claim that the trial court erred in admitting involuntary statements are also unavailing. Petitioner states that the trial court should have suppressed his statements to the police because the police did not provide him with *Miranda* warnings or present him promptly to the Commissioner as required under Maryland law. He also alleges that the trial court failed to sufficiently weigh the lack of prompt presentment in considering the voluntariness and admissibility of the statement. The state post-conviction court found Petitioner's claim regarding prompt presentment was waived because he failed to raise the issue on direct appeal. Further, the post-conviction court held as follows:

> Additionally, the delay in presentment is only a factor when considering the voluntariness of a confession. In a more recent case, the Court of Appeals rejected any bright line standard with regards to the delay in presentment. In *Ayala v State of Maryland*…the court discussed 10-912 of the Courts and Judicial Proceedings Article.
>
> That article provides: Failure to take defendant before judicial officer after arrest.
>
> (a) *Confession not rendered inadmissible*. A confession may not be excluded from evidence solely because the defendant was not taken before a judicial officer after arrest within any time period specified by Title 4 of the Maryland Rules.
>
> (b) *Effect of failure to comply strictly with Title 4 of the Maryland Rules*. Failure to strictly comply with the provisions of Title 4 of the Maryland Rules pertaining to taking a defendant before a judicial officer after arrest is only one factor, among others, to be considered by the court in deciding the voluntariness and admissibility of a confession.

The court noted that "involuntariness" was directly related to a deliberate delay for the purposes of soliciting a confession. "Absent some nefarious action on the part of the detectives, there was no reason to weigh the delay in presentment against the state." The decision of the trial court in *Ayala* was upheld. The standard of review was "clearly erroneous" and the evidence was viewed in the light most favorable to the prevailing party. Applying that analysis to the facts in petitioner's case, the suppression motion was denied by the trial court. At issue was the length of delay in presentment. The trial court determined that although the petitioner was not presented to a commissioner within 24 hours, the delay, considered with all other known factors did not render petitioner's statements as involuntary. Specifically, the court reasoned that the actual time petitioner was undergoing interrogation was proportionately small compared to the length of the delay. Therefore, this court finds no reason to insert a different outcome in the issue of voluntariness as was determined by the trial court.

Paper No. 6, Ex. 20, p. 4-5.

The court further found:

For the same reason as stated in the answer to Allegation One, this court upholds the decision of the trial court. As noted in Courts and Judicial Proceedings and in the *Hiligh* and *Ayala* opinions, failure to be presented to a commissioner within 24 hours of arrest is but a factor in the determination of the issue of voluntariness of statements made by the petitioner. If the delay was deliberate and designed for the sole purpose of soliciting a confession, it must be given heavy weight. ..The trial court stated that the police were scurrying around trying to get search warrants prepared and were preparing a probable cause statement. The court concluded that although there was a delay in presentment the total time period he was questioned was proportionally short. The petitioner was allowed to sleep, take breaks, eat food and smoke cigarettes. At the hearing, petitioner testified he knew the police would get him anything he requested. The trial court did not find that the delay was in any way related to a purposeful attempt by police to solicit a statement. The petitioner was brought to the Sheriff's Office at 0344 on December 3, 2000. He went to sleep and was not first questioned until 1630. After that point, the petitioner made several statements. His last statement was completed by 0019 on December 4, 2000. At that time, the

9

petitioner went for a car ride with the police to help recover the items he discarded shortly after the crime. The petitioner returned to the Sheriff's Office at approximately 0300. He was brought before the commissioner at 0900 on December 4, 2000, some 30 hours after his arrest. The events of the investigation unfolded slowly but no evidence or allegation was ever made that the police were purposeful in delaying the presentment. The petitioner was finished making all his statements before the 24-hour clock expired. Without such allegations of intentional delay in an attempt to solicit a confession, the trial court gave the appropriate weight to the delay when deciding the petitioner's statements were voluntary.

*****

The trial court held a lengthy motions hearing regarding the issue of *Miranda* warnings. The petitioner alleged he was not properly "Mirandized" prior to his first interrogation that resulted in a verbal statement. The trial court ruled that he was properly given his *Miranda* warnings and that no statement provided by the petitioner was in violation of his 5th Amendment constitutional rights. Sergeant Norma Traas-Harkey testified that upon arrest, she verbally advised the petitioner of his *Miranda* rights. Sgt. Traas-Harkey asked petitioner if he understood his rights to which he replied he did. The petitioner asked Sgt. Traas-Harkey why he was being arrested but she replied she was not at liberty to discuss it. The petitioner was not interrogated until 13 hours later at 1630. The trial court determined that the petitioner was advised of his rights on 4 separate occasions. The trial court concluded that no statement was made by petitioner in violation his rights against self-incrimination. The petitioner chose not to litigate this issue on appeal. Post Conviction is not a substitute to litigate a matter that could have been litigated in a prior proceeding. Based on the findings of the trial court and the testimony presented at the hearing, this Court finds that petitioner was properly read his *Miranda* warnings when he was arrested and first interrogated.

*Id.*, Ex. 20.

The state courts findings are supported by the record. Petitioner was advised of his rights pursuant to *Miranda* on multiple occasions and he indicated he understood those rights. In considering Petitioner's challenge to the voluntariness of his statements, the trial court considered all factors surrounding his statements, including the delay in presentment to the

commissioner, and found the statement to be voluntary. The post-conviction court's review of these issues is not an unreasonable application of federal law. *See, e.g. Michigan v. Mosely*, 423 U.S. 96, 99-100 (1975) (confession must follow advice of rights in order to be admissible); *Blackburn v. Alabama*, 361 U.S. 199, 205 (1960) (confession must be voluntary in order to be admissible).

    2.    Error of Trial Counsel

To establish a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a convicted defendant must demonstrate that counsel's performance (1) "fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant. *Id*. at 688, 692. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. The ultimate focus of the *Strickland* inquiry is on the "fundamental fairness of the proceeding whose result is being challenged." *Id*. at 696.

In evaluating whether counsel's performance fell below an objective standard of reasonableness, a court must consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688. In its analysis, a court must be "highly deferential," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotations omitted). A court must not use the benefit of hindsight to second-guess strategic decisions made by counsel unless they were unreasonable. *Id*. at 690.

With regard to the prejudice prong of *Strickland*, a defendant need not demonstrate that the outcome of the proceeding would have been different, but rather that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Even if counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

      a.      Trial counsel error regarding the expert witness

Plaintiff claims that his trial counsel was ineffective for failing to timely provide the court with the qualification of his expert witness and by failing to object to the trial court's ruling precluding the testimony of the expert witness, Dr. Morris. Paper No. 1. In reviewing these claims, the state post-conviction court agreed that trial counsel erred in not providing information regarding Dr. Morris's credentials. The post-conviction court, however, concluded that Petitioner failed to demonstrate any prejudice as a result of this error of trial counsel. Specifically, the post-conviction court found:

> Mr. Kane was aware of the statutory requirements imposed on witnesses proffered to testify on psychological issues. He testified he attempted to hire a defense expert in this area by applying through the public defender's office for funds to secure an expert. That request was denied. The psychological "issue" to be explored was Intermittent Explosive Disorder (IED) which Dr. Morris had diagnosed petitioner as having. IED cannot be used to negate state of mind in a premeditated homicide case. Therefore, although Mr. Kane was incorrect in his belief that the court ruled against him and he did not pursue information on Dr. Morris' credentials, his negligence was not prejudicial to the petitioner. In fact, Dr. Morris was as the State's Attorney represented a Ph.D. licensed professional counselor and not a licensed psychologist. He was unable to render an opinion on the issue of criminal responsibility according to Maryland Statutes. Therefore the failure to provide credentials for Dr. Morris was not ineffective assistance of counsel.

Paper No. 6, Ex. 20, at p. 8-9.

Dr. Morris's testimony was inadmissible under Maryland law; as such, any error on the part of trial counsel to elicit such testimony states solely a state law claim. Federal habeas relief is not available for review of an alleged error involving state law.[3] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The post-conviction court's finding is neither an unreasonable determination of the facts or contrary to established Supreme Court precedent. Thus, the finding of the post-conviction court shall not be disturbed.

    b.    Trial counsel was ineffective for making prejudicial closing argument

Plaintiff next claims that his trial counsel made prejudicial closing arguments, specifically pointing to counsel's comment that "Killing of a parent in front of a child was some type of 1st degree murder." Paper No. 1. In rejecting this claim, the state post-conviction court stated,

> In his closing argument, the defense counsel argued that the petitioner was guilty of second degree murder, not first degree premeditated murder. The trial defense counsel went on to argue,
>
>> "This is a horrible case. It's a horrible case. It ought to be a type of first degree murder to kill a child's mother or parent within the child's presence, whether you intended or premeditated the murder or not. Just that act ought to be a type of first degree premeditated murder. Like Felony murder is. But it's not. It's not.
>>
>> The law requires premeditation. That is what he **did** not do."…..
>
> The same two-prong Strickland test applies to this allegation as well. Although attorneys might disagree as to the effectiveness of such an argument, it was clear Mr. Kane was trying to relate to the jury's natural sympathy for the

---

[3] The post-conviction court did find that Dr. Morris's testimony was admissible at sentencing and counsel was ineffective for not presenting Dr. Morris at the sentencing hearing. Accordingly, that court granted Petitioner a new sentencing hearing. *Id.*, Ex. 20, p. 12-15.

13

> victim and her children yet highlighting the states' burden of proving
> premeditation. The closing argument was nonetheless part of a well thought out
> trial strategy. Counsel's argument was not deficient and was part of his discretion
> and trial tactics. This Court finds that the argument was neither ineffective as
> defined by Strickland nor prejudicial to the defendant.

*Id*., Ex. 10 at 9 (emphasis in original).

Absent clear and convincing evidence to the contrary, a claim that counsel's decision was premised on trial strategy cannot be disturbed. *See Evans v. Thompson*, 881 F.2d 117, 125 (4th Cir. 1989) Having examined the post-conviction court's ruling and independently examined the record, this Court is satisfied that in applying the *Strickland* standard to the instant allegations, Petitioner has not demonstrated the prejudice necessary to establish ineffective assistance of counsel under 28 U.S.C. § 2254(d). *See Stamper v. Muncie*, 944 F.2d 170, 178 (4th Cir. 1991) (challenge to counsel's trial decisions and/or tactics amounted to no more than "Monday morning quarter backing.").

    c.    Trial counsel was ineffective in failing to object to the omission of part of the voluntary intoxication instruction

Plaintiff states that his trial attorney was ineffective for failing to object to the trial court's voluntary intoxication instruction on the basis that it omitted certain language contained in the Maryland pattern jury instructions. Paper No. 1. In rejecting this claim, the post-conviction court found:

> The trial judge, over the objection of the State's Attorney, gave the jury
> MPJI-Cr 4:17.1, Voluntary Intoxication. The trial court read the first paragraph
> of the instruction but not the second paragraph. The omitted paragraph stated:
>
> "A person can be (drinking)(taking drugs) and even be intoxicated but still
> have the necessary mental faculties to act deliberately and with premeditation. In
> order to convict the defendant of first degree murder, the state must prove, beyond
> a reasonable doubt, that the degree of the intoxication did not prevent the
> defendant from acting deliberately and with premeditation.

****

> The trial defense counsel did not object to the instruction as given. During the post conviction hearing, Mr. Kane testified that he did not realize the second paragraph was omitted. The part of the instruction read to the jury succinctly stated the defense of voluntary intoxication to a premeditated crime. In the appeal filed in this case, the Court of Special Appeals examined the issue of the missing paragraph under the plain error doctrine because defense counsel did not preserve the issue by objecting to the instruction as read. The Court concluded that the omission was not "plain error" because the circumstances were not "compelling, extraordinary, exception or fundamental to assure the defendant a fair trial" citing *State v. Daughton*, 321 Md. 206, 211 (1990). The Court reasoned that the instruction on reasonable doubt had the state's burden of proof combined with the voluntary intoxication instruction as read without the omitted paragraph was sufficient to convey the same message as the omitted sentence.
>
> Therefore, applying the Strickland analysis for ineffective assistance of counsel, although Mr. Kane's failure to object was based on his inattention, there was no prejudice to the petitioner. This Court also finds that the instructions as read were sufficient.

*Id.*, Ex. 20, p. 10.

The post-conviction court' conclusion that the trial court's jury instructions were a sufficient explanation of Maryland law is not subject to review by this Court. *See Smith v. Moore*, 137 F.3d 808, 821-22 (4th Cir. 1998). Even assuming, *arguendo*, that counsel's conduct was deficient relative to petitioner's claims of error regarding the jury instructions, Petitioner has failed to show a substantial likelihood that the jury would have reached a different verdict. Consequently, the undersigned finds that the post-conviction court's conclusions regarding the trial court's instructions to the jury, and the lack of prejudice resulting from defense counsel's failure to object, are neither contrary to or an unreasonable application of clearly established federal law, nor an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d).

  d.  Trial counsel erred in failing to argue that Petitioner's statement was involuntary

due to the delay in presentment

Petitioner next contends that his trial counsel was ineffective for failing to argue that his statement to police was involuntary because the delay in presentment was for the sole purpose of eliciting an incriminating statement. Paper No. 1. In rejecting this argument, the post-conviction court stated:

> The trial defense counsel presented witness testimony that focused in the issue of the reason for delay in presentment. A full hearing was held and the judge, based on the evidence not argument of counsel, ruled that the statements were not involuntary….
>
> Failing to argue the legal significance of evidence already ruled admissible would confuse the jury and require them to make determinations of law. Trial defense counsel brought the appropriate motions and made a decision not to confuse the jury by a having his defendant testify on direct examination about his statements then challenging those same statements as involuntary.

Paper No. 6, Ex. 20, p. 14.

The post-conviction court's findings are supported by the record. The issue of Petitioner's presentment was litigated during pretrial motions and a hearing was held on the matter. The trial court found no violation by the State and deemed Petitioner's statements voluntary and admissible. Declining to make more of an issue of the voluntariness of Petitioner's statement, when Petitioner testified at trial concerning the circumstances of the murder and the jury was instructed as to delay in presentment being one factor to consider in determining the voluntariness of the statement, was within sound trial strategy of defense counsel. The post-conviction court's finding as such was a reasonable application of federal law and survives scrutiny under 28 U.S.C. 2254(d).

    e.    Appellate counsel was ineffective for failing to argue a prompt presentment violation on appeal

16

Petitioner also alleges that appellate counsel was ineffective in failing to argue the violation of prompt presentment on appeal. Paper No. 1.[4]

In dismissing this claim, the post-conviction court stated:

> During the hearing, appellate counsel testified that he made a tactical decision not to raise the issue as the case law that was controlling at the time supported the trial court decision. Additionally, the appellate attorney testified that because the petitioner's statement was made prior to the expiration of the 24 hours, he felt the issue was not in controversy. Subsequently, new case law developed regarding the presentment issue. In *Hiligh v. State of Maryland*, 375 Md. 456, 465, 825 A.2d 1108 (2002), the Court of Appeals ruled that delaying presentment in order to interrogate an accused for the purpose of extracting incriminating statements constitutes a violation of the Rule and such a violation is a factor to be considered in determining the voluntariness of any resulting confession. As noted, the issue of the delay was highly contested in a pre-trial motion. The delay was considered among all factors in the trial court's ruling that the confession was not involuntary. The appellate counsel's decision not to pursue involuntariness on the appeal was based on a reasonable professional judgment he gleaned from the detailed facts contained in the transcript of the Motion to Suppress. The law recognizes that counsel is permitted to use judgment and raise only the issues he things have a reasonable chance of success. *Jones v. Barnes*, 463 U.S. 745 (1983). Therefore, the failure to raise the issue of suppression based on delay in presentment was not deficient and did not deny the petitioner effective assistance of counsel.

Paper No. 6, Ex. 20, p. 15.

The post-conviction court's findings are supported by the record. The likelihood of success on appeal with regard to the issue of the voluntariness of Petitioner's statements was minuscule, and appellate counsel was not required to raise such an issue at the expense of burying good arguments. *See Jones v. Barnes*, 463 U.S, 745, 753-54 (1983).

## **Conclusion**

---

4 Claims alleging ineffective assistance of appellate counsel are analyzed under the *Strickland* standard. *See Smith v. Robins*, 528 U.S. 259, 285 (2000).

In light of the rulings of the Court, the instant Petition for habeas corpus relief will be denied, and this case will be dismissed by separate order. A Certificate of Appealability will not issue.[5]

Date: April 27, 2010                               /s/
                                        Alexander Williams, Jr.
                                        United States District Judge

---

[5] There is no absolute entitlement to appeal a district court's final order in a habeas corpus proceeding. *See* 28 U.S.C. § 2253 (c) (1). "A [COA} may issue… only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253 (c) (2). To make such a showing, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, (2000)), or that "that issues presented were 'adequate to deserve encouragement to proceed further, '" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).